## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LANDMARK AMERICAN INSURANCE COMPANY,<br><br>               Plaintiff,<br><br>v.<br><br>NURSELECT LLC,<br><br>               Defendant. | Civil Action No.: 5:24-cv-01412-GAW |

### **OPINION**

### I.    **Introduction**

Before the Court are cross motions for summary judgment, filed by Plaintiff Landmark American Insurance Company ("Landmark" or "Plaintiff") at Dkt. #34 and Defendant NurSelect, LLC ("NurSelect" or "Defendant"), at Dkt. #29. While this Court must independently assess both motions, from the Court's review of the record, it is clear that the parties are essentially arguing opposite sides of the same interpretive coin. They generally agree on the operative facts, meaning all that remains is for the Court to interpret the provisions of the insurance policy at issue to determine if the Plaintiff is obligated to provide coverage for the claim filed against the Defendant. The legal questions for the Court to address are whether a specified email and attachment constitute a claim under the policy and if so, when that claim was received.

This Court finds that the email and attachment sent by Saxton & Stump to David Shelly, NurSelect's President, on January 12, 2023 constitutes a "claim" under the policy and that such claim was "received" when the email appeared in Mr. Shelly's inbox on January 12, 2023 (and not when Mr. Shelly first became aware of it months later). This Court grants Plaintiff's motion for

summary judgment and denies Defendant's motion for summary judgment.[1]

## II. **Factual Background**

### a. **The Incident**

NurSelect is a healthcare staffing agency which operates in Pennsylvania. (Dkt. #32 at ¶ 1). NurSelect had a staffing agreement with a nursing home called The Rehabilitation Center at Brethren Village ("Brethren Village"). (*Id.* at ¶ 5). The staffing agreement between NurSelect and Brethren Village included a section entitled "Apportionment of Liability of Damages and Indemnification" which stated:

> Apportionment of Liability. It is hereby stipulated and agreed between the [Brethren Village] and NurSelect that with respect to any claim or action arising out of the Services, each entity shall only be liable for payment of that portion of any and all liability, costs, expenses, demands, settlements or judgments resulting from negligence, actions or omissions of its own agents, officers, and employees.

(Dkt. #33 at MSJ_00000597).[2]

On May 12, 2021, a patient at Brethren Village named Geraldine Wiggins was injured as a result of a fall. The day of Ms. Wiggins's fall, NurSelect staffed a Certified Nursing Assistant named Ayanna McDowell to work at Brethren Village, and Ms. McDowell was involved in Ms. Wiggins's care. (MSJ_00000374-376). NurSelect was made aware of Ms. Wiggins's injury the day it occurred by way of a statement it received by email. (MSJ_00000374). Ms. Wiggins subsequently passed away. On July 11, 2022, Brenda Kling, on behalf of Ms. Wiggins's estate, filed suit against Brethren Village alleging that Brethren Village failed to properly care for Ms. Wiggins, and that such failure contributed to Ms. Wiggins's death three months later.

---

[1] Landmark also argues for alternative bases for summary judgment. But because this Court grants on its first argument, it need not address the others.

[2] All citations to documents with the Bates antecedent MSJ_ refer to documents in the Joint Appendix (Dkt. #33).

(MSJ_00000341, ¶¶ 58-59).

As early as October 14, 2022, Mr. Shelly, NurSelect's President, was in communication with Saxton & Stump, counsel for Brethren Village with respect to the suit brought by Ms. Kling. (MSJ_00000630-632). These emails with attorney Kimberly Selemba, which Mr. Shelly opened and to which he replied, were from the "@saxtonstump.com" domain name. *Id.* On January 12, 2023, Linda Reidenbaugh, a paralegal working for Saxton & Stump, transmitted to Mr. Shelly *via* email, correspondence on behalf of Ms. Selemba. (MSJ_00000620, attaching MSJ_00000622-623, the "Attorney Letter"). Importantly, Ms. Reidenbaugh's email address bears the same "@saxtonstump.com" domain name with which Mr. Shelly was already familiar.

The Attorney Letter sent to Mr. Shelly references prior communications between Kimberly Selemba and Mr. Shelly, and then shares that their "investigation has revealed that Ayanna McDowell, CNA, who was employed by NurSelect, LLC at the relevant time, had direct involvement in this alleged fall." (MSJ_00000622). The Attorney Letter further references the Apportionment of Liability provision in the contract between NurSelect and Brethren Village, discussed *supra*. The Attorney Letter concludes by saying:

> Brethren Village will be filing a joinder complaint against NurSelect to invoke NurSelect's contractual agreement to indemnify Brethren Village for the alleged negligence, actions, or omissions of Ms. McDowell related [sic] the care and treatment of Ms. Wiggins. Please provide notice of this pending joinder against NurSelect to your liability insurance provider so that counsel can be assigned to represent NurSelect's interests.

(MSJ_00000623). This email was sent and received on January 12, 2023. Mr. Shelly testified that he did not open the email on January 12, 2023 when it was received, and does not know why he did not do so. (MSJ_00000379). Instead, Mr. Shelly first opened the email on September 12, 2023. (*Id.*). On June 13, 2023, Brethren Village filed a Joiner Complaint against NurSelect, formally involving it in the suit brought by Ms. Kling. (MSJ_00000259-324).

3

### b. The Policy

NurSelect was the holder of a liability insurance policy issued by Landmark. (MSJ_00000185-258, the "Policy"). The period for which the Policy was active (the "Policy Period") was March 1, 2023 through March 1, 2024. (MSJ_00000186). The Policy was a "claim made" policy. (MJS_00000212). This means, from a timing perspective, that the relevant question as to whether a claim will be covered by insurance is not when the alleged act took place, but when the claim was "first made against the Insured." (*Id.*). Additionally, "[a]ll Claims arising out of a single negligent act, error or omission, or a series of related acts, errors or omissions by one or more Insureds shall be treated as a single Claim for all purposes of this policy." (MSJ_00000213). "Claim" is defined as "a written demand for monetary or non-monetary relief received by the Insured during the Policy Period, including the service of suit, or the institution of an arbitration proceeding. . . ." (MSJ_00000216-217).

### III. Legal Standards

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Tse v. Ventana Med. Sys., Inc.*, 297 F.3d 210, 218 (3d Cir. 2002). This Court "must view the facts in the light most favorable to the non-moving party" and make every reasonable inference in that party's favor. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). After drawing those inferences, the relevant inquiry is "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Genuine issues of material fact refer to any reasonable disagreement over an outcome-determinative fact." *In re Energy Future Holdings Corp.*, 990 F.3d 728, 737 (3d Cir. 2021). "The mere existence of a scintilla of evidence in support of the [non-

movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Liberty Lobby*, 477 U.S. at 252. "The same standards and burdens apply on cross-motions for summary judgment." *Allah v. Ricci*, 12–4095, 2013 WL 3816043 (3d Cir. July 24, 2013). [3]

Under Pennsylvania law, it is the Court's responsibility to interpret an insurance contract. *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997). If a provision of an insurance policy is ambiguous, it should be construed in favor of the insured and against the insurer. *Id.* at 901-02. But in the absence of ambiguity, this Court is required to give effect to the plain language of the contract, which must be read in its entirety. *Id.* at 901.

## IV. Analysis

In ruling on either Plaintiff or Defendant's motion for summary judgment, this Court must determine whether the Attorney Letter is a "Claim" under the Policy and whether it was "received" on January 12, 2023. If the answer to both of these questions is "yes" (while resolving any factual disputes in NurSelect's favor and granting NurSelect all reasonable inferences), then summary judgment is warranted in favor of Landmark, and NurSelect's motion for summary judgment must be denied. If the answer to either question is no, the Court must turn to Landmark's alternative arguments for summary judgment.

### a. The Attorney Letter is a "Claim."

Under the Policy, "Claim" is defined as "a written demand for monetary or non-monetary relief received by the Insured during the Policy Period, including the service of suit, or the

---

[3] As a formal matter, this Court must consider each motion on its own, granting Plaintiff all reasonable inferences as to Defendant's motion, and *vice versa*. But in the case at bar, the Parties seem to agree as to the crucial facts, and summary judgment will hinge on this Court's resolution of questions of law as to interpretation of the Policy. For that reason, the Court's analysis of both motions can effectively be handled at once.

institution of an arbitration proceeding. . . ." (MSJ_00000216-217). The Attorney Letter informed NurSelect of an impending joinder complaint against NurSelect pursuant to its contract with Brethren Village. Therefore, the operative question is whether such language constitutes a written demand for monetary or non-monetary relief.

This Court concludes that the Attorney Letter *is* a claim pursuant to the Policy. In *Carosella & Ferry, P.C. v. TIG Ins. Co.*, Judge Yohn was presented with a nearly identical question. 189 F. Supp. 2d 249, 253-54 (E.D. Pa. 2001). The policy in that case defined claim to mean "a demand received by the Insured for money or services, including the service of suit or the institution of alternative dispute resolution or arbitration proceeding against the Insured...." *Id.* Counsel for plaintiff in the underlying case sent a letter to Carosella which stated an intention to file a lawsuit, contained an instruction to Carosella to contact its insurance carrier, and a requested to have that carrier contact counsel for the underlying case's plaintiff. Judge Yohn found it "plain" that this constituted a claim under the relevant insurance policy.

Here, this Court finds it similarly "plain" that the Attorney Letter is a "Claim." A joinder complaint for indemnification is a monetary demand that the joinder defendant pay for damages which would otherwise be attributable to the joinder plaintiff. A factual assertion that Brethren Village "will" be filing such a joinder complaint is therefore a demand for indemnification, which means the Attorney Letter is a "Claim" under the Policy. While this Court will diligently apply the plain meaning of the unambiguous terms of the contract, it will not require a third party, with no relationship to an insurer, to use "magic words" to trigger when a "Claim" has been made under a policy such as this.[4] This Court will not interpret "Claim" in a way that creates such a requirement

---

[4] While the interpretation proposed by NurSelect would work to its benefit in this case, that interpretation could obviously hurt an insured in a future case. Under its interpretation which renders the Attorney Letter *not* a claim, if the Attorney Letter were received shortly before the Policy Period ended but suit was not filed until after the Policy Period ended, there would be no

that exacting language is imposed on a third-party to ensure coverage.

An ordinary consumer of insurance products would understand that being informed of a forthcoming suit for indemnification based on credible allegations of liability is a "Claim." Therefore, this Court holds that the Attorney Letter established a "Claim" with respect to the allegations of the underlying state court complaint.

### b. The Attorney Letter was "Received" on January 12, 2023.

Having determined the Attorney Letter is a "Claim," the next question is: when was that claim "received?" Landmark asks this Court to consider the record evidence and conclude that in the case at bar the email transmitting the Attorney Letter was received on January 12, 2023, when it was sent via email and received in Defendant's inbox. NurSelect, conversely, requests a new brightline and broadly-applicable rule, which would hold that an email is "received" when its recipient becomes aware of it. This Court does not find this to be a difficult question. An email is "received" when it is available for review in the recipient's inbox, not when the recipient happens to notice it.

Meriam-Webster defines "receive" to mean, *inter alia*:

- to come into possession of;
- to act as a receptacle or container for;
- to permit to enter.[5]

Each of these definitions plainly supports Landmark's approach to defining "receipt" of the email. Mr. Shelly came into the possession of the Attorney Letter when it first arrived there. At that point he, and only he, controlled whether it was opened and read, summarily deleted, responded to or

---

coverage. While courts are required to interpret policy language setting out exceptions to coverage narrowly, this Court sees no reason to do so where, as here, the interpretation involves a neutral provision, and where neither reading is "pro-insurer" or "pro-insured" when applied broadly.

[5]    https://perma.cc/569X-7Z5G.

ignored. The property right in that email became his on the date it was received. Further, his email inbox became a receptacle or container for the Attorney Letter the moment it was transmitted there. From that moment, the Attorney Letter was utilizing storage from his email's inbox and could only be accessed from within it. Finally, the Attorney Letter was permitted to enter Mr. Shelly's inbox the moment it first arrived there, regardless of whether Mr. Shelly decided to pay any attention to it.

Landmark's approach is also much more consistent with the common usage of the term "received" as used regarding email. Imagine this hypothetical. You post a listing on a local Facebook group offering to sell a bicycle in response to the first $100 offer you receive. You go to bed and put your phone away for the evening. Overnight, two offer emails arrive, one at 3:00 A.M., and one at 6:00 A.M. In the morning, you pick up your phone, and see the more recent email first, because it is at the top of your inbox. No reasonable person would believe the 6:00 A.M. sender is entitled to purchase the bicycle.

Using NurSelect's argument that the mail was not received until Mr. Shelly opened it, when compared with expectations for received regular mail, results in an absurd conclusion. For example, under NurSelect's argument, the receipt is irrelevant, it is the "opening" of the email that invokes notice. By analogy that means that no one would be responsible for the contents of regular mail until the recipient chose to open the envelope. So, using this analysis, when a credit card statement it delivered to debtor with a payment due date thirty-days later, the recipient can simply not open the envelope in which the statement is held and claim that there is no obligation to ever pay the debt owed as, using NurSelect's argument, failure to open the letter equals not received.

This Court need not- and does not- decide whether the "Mailbox Rule," and all its appurtenant legal implications, applies to email in the exact same way it does physical mail. There

is no need for a presumption that the email was delivered because the parties here do not dispute that the email was delivered. NurSelect concedes the email was in Mr. Shelly's inbox when he ultimately went looking for it. (MSJ_00000374). NurSelect has made no argument and introduced no evidence that the email was somehow surreptitiously inserted in Mr. Shelly's inbox after the Policy Period began with a forged date. Indeed, Mr. Shelly has no explanation for why he did not read it on the day it was received.[6] Nor is there any competent evidence to call into question the fact that the email was delivered as a matter of course. This Court need not rely on a presumption of delivery. The factual record is replete with evidence that the email was, in fact, received as normal.

NurSelect's approach to defining "receive" would provide enormous opportunities for those willing to engage in bad faith.[7] A tortfeasor without an insurance policy could knowingly refuse to open an email that they suspect has a demand letter. After they see that email's arrival and ignore it, the tortfeasor could run out and get a "claim made" insurance policy. Under NurSelect's rule, as long as that tortfeasor cleverly did not open that demand letter, the newly-acquired insurance policy would require the insurance company to pay for a claim which would only be timely under the insurance policy due to intentional manipulation by the tortfeasor.

The Court is not at all persuaded by NurSelect's stated concerns with the safety and security of email. NurSelect argues that experts caution against opening emails from unknown senders with attachments that implicate cyber security concerns, and that such concerns counsel against finding

---

[6] Mr. Shelly, in his deposition, seems to implicitly concede that the email in fact made it into his inbox as normal, but that "Obviously I didn't see this email or think that it should be opened or whatever. For whatever reason, it wasn't opened." (MSJ_00000381)

[7] To be clear, this Court in no way believes that NurSelect or Mr. Shelly have engaged in any bad faith. It only explores the possibilities for exploitation created by NurSelect's brightline rule.

that the Attorney Letter was "received" in January. This Court recognizes the validity of the concerns expressed by NurSelect when viewed at the macro level, and such considerations may counsel against a brightline rule. But this Court is not establishing a brightline rule in this case. Instead, this Court is ruling on the facts before it. Based on the record before this court, those cyber security concerns are simply not present in this case.

This was not an email from a random sender. This email came to Mr. Shelly from a domain name he had every reason to recognize from his prior emails with the firm, with a subject line which clearly referenced in incident of which he was already aware. Given his previous communications with Ms. Selemba, if Mr. Shelly had any concerns about the safety of the attachment he received, he could have checked directly with Mr. Selemba. If Mr. Shelly was still unsure, he could have contacted his own technical support team (if he had one) or engaged an outside vendor to assist (if he did not).

This Court declines to adopt the brightline rule requested by NurSelect that an email is "received" when its recipient becomes aware of it, rather than when the email is available for review in the recipient's inbox. Based on the record evidence before this Court, there is no genuine issue of disputed fact- the Attorney Letter was "received" on January 12, 2023.

### c. The Policy Period

Finally, because the Policy Period only covers Claims received by NurSelect from March 1, 2023 through March 1, 2024, this Court concludes that, even taking all facts in the light most beneficial to NurSelect and making all reasonable inferences in its favor, the Claim was received prior the commencement of the Policy Period.

### V. Conclusion

Making all reasonable inferences in NurSelect's favor, this Court finds as a matter of law

that the Claim was "received" outside the Policy Period and as a result, Landmark has no obligation to provide coverage or defense for it. For that reason, it is entitled to summary judgment as to Count I of its Complaint, and its motion is granted. Counts II and III of the Complaint are dismissed as moot. NurSelect's motion for summary judgment is denied. appropriate order will be docketed separately.

Dated: March 3, 2025                    BY THE COURT:

                                        _____
                                        GAIL A. WEILHEIMER        J.